ANTON H. SCHOFIELD, Appellee, v. CLYDE COOPER and
MARIE COOPER, Administrators of Estate of WALTER
COOPER, Deceased, and J. ORENSON and CALHOUN
COUNTY, Appellants.

**Surface water:** DIVERSION. A county in the improvement of high-
ways has no right to collect surface water either from the high-
way or from adoining lands and turn it onto the land of another
where it had not naturally flown.

**Drainage:** ESTOPPEL. No matter what the evidence may show in
support of an estoppel, if not pleaded it is unavailing. In the in-
stant case the evidence fails to show that one landowner was
estopped as against another from filling a drainage ditch.

**Drainage:** NUISANCE: ABATEMENT. Where the county constructed
a highway ditch in such manner that the surface water from the
land of one landowner was made to flow unnaturally over the
land of another, the latter had the right to abate the nuisance so
created by going upon the highway and filling the ditch.

**Easement:** ADVERSE USER. The act of one landowner in filling a
highway ditch carrying water from the land of an adjacent owner
onto his own, when done within the period of limitation, will
defeat the claim of easement growing out of adverse user.

*Appeal from Calhoun District Court.*— HON. Z. A. CHURCH,
Judge.

\THURSDAY, JANUARY 12, 1905.

SUIT in equity to compel defendants to remove obstruc-
tions placed by them in a ditch running along the side of a
highway between Webster and Calhoun counties. The trial
court granted the relief prayed, and defendants appeal.—
*Reversed.*

*Wright & Nugent* and *M. E. Hutchinson,* for appellants.

*Kenyon & O'Connor,* for appellee.

DEEMER, J.— Plaintiff is the owner of the S. E. one-fourth of the S. W. one-fourth of section 31, in Webster county, Iowa, and defendants Cooper of the N. W. one-fourth of the N. W. one-fourth of section 2, in Calhoun county. These lands are separated by a highway which runs east and west between the two counties.   As this highway is a correction line, the north and south lines of the two tracts do not exactly correspond.   Plaintiff's west. line is some distance west of defendants' west line, and the east lines of the two tracts show the same divergence.   However, for all practical purposes we may treat the lines as continuous.   To the west of both properties, running north and south, is a natural stream, known as " Cedar Creek," over which, in the line of the highway, is a 25-foot bridge.   East of that the land is almost level, the natural drainage being towards the south.   Some distance east of the creek bridge and south of the west fourth of plaintiff's land there is a culvert, which we shall call " culvert No. 1," across the highway, which is about one and a half feet higher than the banks of the creek.   East of the culvert the land is somewhat lower, and still east of that a trifle higher, than at the culvert.   East of this point the land again descends slightly toward the east until it reaches another culvert between plaintiff's and defendant Coopers' lands.   This we shall call " culvert No. 2."   East of this culvert the land again rises slowly and gradually.   At culvert No. 2, which drains a large part of plaintiff's land and all the land immediately east thereof, a ditch was constructed by defendant Coopers' father southwesterly through his land until it reaches Cedar creek to the west.   On the southwest corner of plaintiff's land are two ponds, one of which extends into the highway, culvert No. 1 being at the west side thereof.   There are also at least two ponds on the southeast corner of plaintiff's land, the overflow from which drains through culvert No. 2.   Culvert No. 2 was constructed more than twenty years ago, and it carried the surface water from nearly all of the plaintiff's land down upon and through

the land owned by Cooper, which was the natural course of the water. At the extreme southwest corner of plaintiff's land, where the ponds are of which we have spoken, there is a small tract which naturally drained toward the southwest and over land belonging to one Hinch; this land being immediately west of that owned by Cooper. Just the number of acres which were so drained we have no means for ascertaining, save that it appears from the maps to be small, and nearly covered by ponds.

Commencing with culvert No. 1, the elevations in the highway going eastward are as follows: At the culvert, 100; just east of the pond in the highway, 99.95; at the north side of highway, where the fill of which complaint is made was put in, 100.32; and on the south side of the highway, at same place, 99.96; a few rods east of this fill, 99. These are all the data we have, save that the elevations show a natural drainage from the pond in the highway southwesterly over the land owned by Hinch, with a divide between the Hinch and the Cooper land, the elevation of which varied from 101.20 at the north end thereof to 100 at the south. As near as we can gather from the evidence, culvert No. 2 was built about the year 1875, and ditches made in the north side of the highway to convey the water thereto. Culvert No. 1 was built by order of the board of supervisors in the year 1899. At the same time a road was thrown up through and across the pond, and a ditch dug on the north side of the highway, commencing at or near the pond, and running east along the highway through the slight divide of which we have spoken, until it connected with the ditches theretofore constructed to carry the water to culvert No. 2. At the highest point in the highway between culverts 1 and 2 this ditch was two and a half or three feet deep. It was originally dug by a contractor under the county, and down until about the year 1897 carried the water from the southwest part of plaintiff's lands and the overflow from the ponds which did not pass through culvert No. 1 along the highway

eastward to culvert No. 2. No complaint was made of this by the Coopers until the wet years came, and then, as we understand from the evidence, they, in the year 1897, went upon the highway without permission from any one, and filled up the ditch on the north side of the highway at its deepest place. This obstruction was removed by plaintiff, and, after some further attempts to close the ditch, the Coopers went before the board of supervisors of Calhoun county, and secured an order for the closing of the ditch. Defendant Orenson is the road district supervisor, and he, with the Coopers, pursuant to the orders of the board, in November of the year 1899 filled in the ditch at its deepest point. Plaintiff thereupon brought this action to compel the removal of the obstruction.

The law of the case is well settled, and not difficult of application. The county had no right to collect surface water, either on the public highway or from the lands of another, and discharge it upon the lands of one

1. SURFACE WA-
TER: diversion. where it was not wont to go. That it did collect such from a small fraction of the southwesterly part of plaintiff's land and the overflow from the ponds there situate, and carry it through the ditch along the north side of the land down to culvert No. 2, is so well established as to be beyond the pale of reasonable dispute. This it had no right to do. *Holmes v. Calhoun County,* 97 Iowa, 360; *Willitts v. C. B. & K. C. R. R.,* 88 Iowa, 285; *Collins v. Keokuk,* 91 Iowa, 293; *Drake v. C. R. I. & P. R. R.,* 70 Iowa, 59; *Vannest v. Fleming,* 79 Iowa, 638; *Friday v. Henah,* 113 Iowa, 425; *Agne v. Slitsinger,* 96 Iowa, 181. This being true, defendants Cooper had the right to abate the nuisance by filling up the ditch; and the county had authority to give them the permission to do so, unless it be for some matters to which we shall presently refer. The county should have so improved the road as that the surface water would follow its natural course. This it could have done, so far as it was possible to take care of the water in the

ponds on the southwesterly part of plaintiff's land, by placing culvert No. 1 where it crossed the road at the lowest elevation instead of at a point higher than the course of the natural drainage. Having the right to abate the nuisance growing out of the acts of the county in improving the highway, there was no wrong on the part of the Coopers, unless it be that they are estopped by conduct from now closing the ditch.

While adverse user for more than ten years is pleaded, the evidence does not sustain this plea. Defendants objected to this user and first filled the ditch in the year 1897, which was less than ten years after it was established.

2. DRAINAGE: estoppel. No easement was therefore acquired. But plaintiff contends in argument that the ditch was constructed with the aid and assistance of the Coopers; that that part of it west of the obstruction was done under a contract made by the county with one Kent, and that defendants Cooper knew of and acquiesced in the expenditure of money made by the county for that purpose, and that at various times defendants Cooper assisted in cleaning out the ditch that the water might pass through the same; that they enlarged the ditch on their own farm so as to accommodate the accelerated flow of water, and never made any complaint thereof until nearly ten years after the work was done, when, with wet seasons coming on again, they undertook to stop the flow of water through this ditch. Suffice it to say with reference to these matters that they are available to the plaintiff, if at all, as tending to create an estoppel on the part of the defendants. No estoppel is pleaded by him, and under well-known rules he cannot have the advantage thereof, no matter how strong his proofs may be.

However there is no evidence that the defendants Cooper had anything to do with that part of the ditch which they obstructed. When the improvements were made at culvert No. 2, the defendants Cooper did assist in making ditches to take care of the surface water coming from the southeast part of the plaintiff's land and the land lying east of plain-

tiff's tract; but there was no attempt to cut through the divide, and no ditch was made at the point where it was afterwards obstructed by the defendants. That ditch was not made until Kent graded up the road under his contract with the county, and he (Kent), pursuant to his contract, cut the ditch in question so as to make some of the water from the southwest corner of plaintiff's land flow through the same eastward to culvert No. 2. Theretofore the water had passed to the southwest, over Hinch's land. Defendants had no part in the construction of this ditch. The evidence fails to show that the Coopers cleaned out the ditch westward of the place where the obstruction was placed, or at any other place, save to the extent necessary to take care of the surface water from the southeast part of plaintiff's land. It is true that the county spent some money in grading up the road, building culverts, etc., which we must presume was with the Coopers' knowledge; and, if this were properly pleaded as an estoppel, we should be inclined to hold it sufficient for that purpose. But there is no pleading tendering that issue which we can find in the case. The same may be said as to the cleaning out of the ditch. There is no evidence that the Coopers enlarged the ditch through their own land to take care of the water coming from the southwest part of the plaintiff's property. But, if there had been, as plaintiff did nothing on the strength thereof which he would not otherwise have done, and as the ditch so enlarged was not used for the time necessary to create an easement, there is no estoppel here. As to this we may also say that no estoppel on account thereof is pleaded.

Plaintiff seems to be relying on adverse possession, or the establishment of an easement by prescription. He has not shown such uninterrupted user as to establish such right, and therefore must fail. But he claims that

3. DRAINAGE: nuisance; abatement.

he has established such user against the county, and that defendants can have no other or greater rights than the county. This argument is specious, rather

than sound. In the end the water goes down over defendant Coopers' land. This water did not naturally flow there. If its discharge upon them was a nuisance, no matter who was responsible therefor, they had the right to abate that nuisance by going upon the property of the county. In so doing they were performing an act which the county should have done, and in a sense were acting for the county.

But whether this last proposition be true or not, defendants' act so interfered with the user of the ditch by the plaintiff and the county as to defeat the claim of easement growing out of adverse user. The mere fact *4. EASEMENT: adverse user.* that the county was in the wrong would not give the plaintiff a right to flood land. The county makes no claim of a right to flood defendants' land; neither does it claim that the ditch should be maintained for the protection of its highway, or that it is necessary to maintain the same in order that it may improve the highway. It expressly ratified and confirmed the Coopers' act in filling in the ditch. So that the only controversy here is really between the plaintiff and the Coopers. Plaintiff has failed to establish the allegations of his petition, and must therefore be dismissed.

The decree in so far as it is based upon an estoppel is wrong, in that no estoppel is pleaded. On the issues as presented to us the plaintiff is not entitled to a decree, and the judgment must therefore be *reversed.*