A. Kent BRAVERMAN, Appellant,

v.

Frank EICHER et al., Appellees.

No. 2–56858.

Supreme Court of Iowa.

Jan. 21, 1976.

Cahill, Lovelace & Poula, Iowa City, for appellant.

Meardon, Sueppel, Downer & Hayes, Iowa City, for appellees.

Heard by MOORE, C. J., and RAWLINGS, LeGRAND, REES and McCORMICK, JJ.

RAWLINGS, Justice.

Plaintiff (Braverman) appeals from decree entered in his action against adjoining landowners (Seville) for relief from alleged nuisance and damages. We affirm as modified.

The two parcels of land here involved are located in Iowa City. The Seville property (dominant estate) is at the crest of a hill which slopes downward to the north where it adjoins the Braverman tract (servient estate).

In 1964, plaintiff started construction of a six structure apartment complex on the aforesaid northerly tract. He attendantly cut into and graded the southerly irregular embankment alongside the involved lot line.

In 1965, defendant Seville commenced development of a six building apartment complex on its land and in so doing filled and graded the northerly portion thereof.

Because of said cuts and fills by plaintiff and defendants respectively, the above noted slope became an escarpment.

Difficulties developed between the parties hereto, due in large part if not entirely from flowage of water and silt onto the Braverman tract. By reason thereof plaintiff commenced this action. Reduced to outline form, these are the allegations upon which he seeks redress:

(1) In 1965 defendants improperly graded and excavated its land, leaving a large bank of dirt near the property line which sloped steeply downward toward plaintiff's property, thereby altering the natural flow of surface waters from the dominant estate. As a consequence, plaintiff alleges use and enjoyment of his land has been harmed by:

(a) deposits of inordinate amounts of mud and silt;

(b) destruction of vegetation;

(c) impairment of habitability;

(d) obstruction of natural light, air and quiet enjoyment;

(e) costly removal of water and mud from plaintiff's parking lot;

(f) erosion of plaintiff's land because of water flowing from a centrally located drainage pipe placed by defendants in the dirt embankment;

(g) casting of trees, stumps, shrubs, and logs onto plaintiff's land;

(h) depreciation in value of plaintiff's property.

Therefore, plaintiff asks $75,000 damages and an order requiring defendants to "do that which is found necessary and adequate

to prevent future injury" to plaintiff's property.

(2) Defendants "maliciously and willfully" altered the "natural lay of the land" and the "natural flow of surface waters" thereon. For this plaintiff seeks $70,000 actual and $100,000 punitive damages.

(3) Defendants agreed to erect a retaining wall on the property line but failed to do so. Thereupon plaintiff prays $40,000 damages and equitable relief with regard to defendants' breach of such alleged agreement.

Defendants deny these allegations and further raise three affirmative defenses. *First*, prior to any construction or excavation by defendants this plaintiff made numerous "cuts" in the natural bank of land along the property line, thereby removing a substantial portion of the lateral support to which defendants' dominant estate was entitled. *Second*, plaintiff had agreed to construct a retaining wall along the property line. *Third*, in 1965 plaintiff agreed defendants could collect and discharge water through a drainage pipe onto plaintiff's land.

By counterclaim defendants ask that plaintiff be ordered to construct the retaining wall.

In November 1973, trial court's decree was entered. Briefly, the court found Braverman had proved total damages of only $1,432.90, the amount expended by him for removal of silt from his parking lot on several occasions and construction of a drainage pipe extension in order to dispose of water flowing from defendants' land. Based on a finding that the parties hereto were at fault in effecting excavations and fills on their respective tracts, trial court awarded plaintiff half the above sum or $716.45 actual damages. All other relief sought by plaintiff was denied, as was defendants' counterclaim. The court also determined neither party hereto had established existence of an enforceable agreement by the other to construct a retaining wall. Finding, however, they had agreed a retaining wall should be built, trial court ordered it be constructed along the full length of the east-west property line with the total cost thereof to be shared by the parties: one-third to be paid by plaintiff, two-thirds by defendants.

Plaintiff here assigns no less than 18 separate issues in the six divisions of his brief, some of which overlap. Several of these issues relate to matters of fact while others deal with alleged misapplication of the law thereto. Any attempt to specify the issues raised by plaintiff will only serve to unduly extend this opinion.

 I. The mere fact that plaintiff seeks compensatory redress in addition to equitable relief does not, per se, mean this case stands in law. See *Kriener v. Turkey Valley Community School Dist.*, 212 N.W.2d 526, 530 (Iowa 1973); Iowa R.Civ.P. 320. We are persuaded our review is de novo despite trial court's finding to the effect this is essentially an action for damages. See *Larsen v. McDonald*, 212 N.W.2d 505, 507 (Iowa 1973); *First National Bank in Lenox v. Brown*, 181 N.W.2d 178, 181 (Iowa 1970). See also *Mulford v. City of Iowa Falls*, 221 N.W.2d 261, 267 (Iowa 1974); *Estate of Thompson v. O'Tool*, 175 N.W.2d 598, 599 (Iowa 1970).

 II. There has been adopted and developed in this jurisdiction what may best be characterized as a modified civil law rule which recognizes a servitude of natural drainage as between adjoining lands. Under this concept a servient estate must accept surface waters which drain thereon from a dominant estate. On the other hand, no right exists to alter the natural system of drainage from a dominant estate in such manner as to *substantially* increase the servient estate burden. See *Ditch v. Hess*, 212 N.W.2d 442, 448 (Iowa 1973); *Rosendahl Levy v. Iowa State Highway Commission*, 171 N.W.2d 530, 536–537 (Iowa 1969); *Board of Supervisors v. Board*, 214

Iowa 655, 668–671, 241 N.W. 14 (1932); Section 465.22, The Code 1962. See generally *Keys v. Romley*, 64 Cal.2d 396, 50 Cal.Rptr. 273, 275–282, 412 P.2d 529, 531–538 (1966); 78 Am.Jur.2d, Waters, §§ 119–124; 93 C.J.S. Waters § 114.

■ III. It is also understood the instant action is premised upon an alleged private nuisance. See *Larsen v. McDonald*, 212 N.W.2d at 508; Prosser, Law of Torts, § 89 at 591 (4th ed. 1971); 58 Am.Jur.2d, Nuisances, § 6; 66 C.J.S. Nuisances § 2. See generally §§ 657.1–657.2, The Code 1975.

■ IV. On the same subject, some difficulty is encountered in determining whether plaintiff's requests that defendants be required to do what "is found necessary and adequate to prevent future injury to plaintiff" and "to prevent dirt from coming down upon the property of plaintiff" constitute prayers for a prohibitory or mandatory injunction. See *Iowa Natural Resources Council v. Van Zee*, 261 Iowa 1287, 158 N.W.2d 111, 115 (1968); McClintock on Equity, § 14 at 32 (2d ed. 1948); 42 Am.Jur.2d, Injunctions, § 17; 43 C.J.S. Injunctions §§ 4–5.

In any event, we construe the aforesaid prayers liberally. See *Holi-Rest, Inc. v. Treloar*, 217 N.W.2d 517, 526–527 (Iowa 1974); *Schlotfelt v. Vinton Farmers' Supply Co.*, 252 Iowa 1102, 1112, 109 N.W.2d 695 (1961).

And, as stated in *Holden v. Construction Machinery Company*, 202 N.W.2d 348, 363–364 (Iowa 1972):

" 'Wherever a situation exists which is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation, though no similar relief has been given before.' (Citations)."

See also 42 Am.Jur.2d, Injunctions, § 275; 43 C.J.S. Injunctions § 182(c); 27 Am. Jur.2d, Equity, § 103; 30A C.J.S. Equity § 599.

■ Furthermore, the grant or denial of injunctive relief, of any nature, unquestionably rests in the sound judicial discretion of the court. See *Holden v. Construction Machinery Company*, 202 N.W.2d at 360–361 and citations; McClintock on Equity, § 143 at 381; 42 Am.Jur.2d, Injunctions, § 24; 43 C.J.S. Injunctions § 14.

V. Also involved is the commonly accepted rule with regard to balancing of the equities. This concept is thus aptly stated in McClintock on Equity, § 144 at 383:

"In determining whether to exercise its discretion to grant or refuse an injunction, the court should balance all of the equities, which include not only the relative hardships to the parties, but their conduct with reference to the transaction, the nature of the interests affected, and the relative proportion of the interests of each that will be lost by whichever course of action is taken."

See also *Helmkamp v. Clark Ready Mix Company*, 214 N.W.2d 126, 130 (Iowa 1974); *Johnson v. Pattison*, 185 N.W.2d 790, 797–798 (Iowa 1971); 42 Am.Jur.2d, Injunctions, § 56; Annot., 40 A.L.R.3d 601.

VI. By five separate assignments plaintiff contests these findings of fact by trial court:

"There is no evidence in the record that any vegetation was destroyed; no evidence that the 'inhabitability' of plaintiff's property has been or will be impaired; no evidence that the light, air, [and] quiet enjoyment of plaintiff's property has been disturbed, and even if the Court could infer that it had, there is no evidence what the damage is or who suffered such damage; no evidence that trees, stumps, shrubs and logs were placed on plaintiff's land or what dam-

age, if any, was caused if such had occurred. There is no evidence in the record that plaintiff's property has been depreciated in value, in fact, there is no evidence whatever .pertaining to the value of plaintiff's property."

■ Nothing will be gained by a detailed analysis of the foregoing. Our de novo review discloses trial court's findings to the effect plaintiff failed to show destruction of or detriment to the use and enjoyment of his property, as above specified, are not entirely supported by the record.

It still remains, however, plaintiff presented no evidence upon which an attendant monetary award could be granted. Consequently, this statement in *Ferrari v. Meeks*, 181 N.W.2d 201, 206 (Iowa 1970) is dispositive:

"No evidence was introduced on which a dollar amount could be predicated. In the absence of such evidence the claim for damages was properly ignored. *B–W Acceptance Corp. v. Saluri*, (1966) 258 Iowa 489, 498, 139 N.W.2d 399."

See also *Earl v. Clark*, 219 N.W.2d 487, 490 (Iowa 1974); *Stockdale v. Agrico Chemical Co., Div. of Con. Oil Co.*, 340 F.Supp. 244, 255 (N.D.Iowa 1972).

Plaintiff is not entitled to a reversal on these multiple assignments.

VII. The question now posed is whether use of the drainage pipe installed by defendants in the embankment should be abated.

Trial court found:

"The location of this single drain outlet is of no significant damage to the plaintiff and having piped it across his own property it presents no further problem at all. At least there was no evidence presented to the Court that any present problem existed."

■ We agree. Furthermore, a search of the record fails to reveal any evidence upon which it could be reasonably found installation of said pipe so altered the natural system of drainage as to *substantially* increase the servient estate burden. See *Cundiff v. Kopseiker*, 245 Iowa 179, 185, 61 N.W.2d 443 (1953); § 465.22, The Code 1962; cf. *Ferrari v. Meeks*, 181 N.W.2d at 204.

Additionally, an order abating continued use of said drainage pipe would perforce result in a haphazard flow of water over the embankment from the dominant to the servient estate, thereby probably increasing deposits of silt on the latter. Alternatively, defendants could conceivably be required to retain all water on their land and impermissibly discharge same onto some other servient estate. It is self-evident neither such possible option is feasible.

VIII. Plaintiff further voices complaint with regard to the monetary award to him of only half the costs attendant upon removal of accumulated silt from his property and construction of a drainage pipe extension for discharge of water flowing from defendants' land.

Trial court stated:

"[T]he only evidence pertaining to any of the alleged items of damage to the plaintiff's land involved the expenditure that he had incurred in removing silt and dirt from his driveway on several occasions and the expense of putting a pipe across his property to carry water from the defendants' outlet pipe. These damages totaled $1432.90."

In substance, the court further found plaintiff had originally cut into the embankment and defendants subsequently effected an earth fill, but neither provided correlative protection to the other. Thereupon, plaintiff was granted judgment against defendants for $716.45, or half the cleanup cost and pipe extension expense incurred by the latter.

■ We are satisfied an apportionment of these costs and expenses is appropriate. Under existent circumstances, however, a judgment for two-thirds thereof or $958.60 should have been entered for plaintiff against defendants. On remand such corrective judgment, with interest as by law provided, shall be entered.

On plaintiff's instant complaint we modify.

■ IX. Several of plaintiff's assignments relate to respective duties of the parties to this action regarding lateral and subjacent support.

Trial court found:

"[P]laintiff did cut the terrain as it existed when all this activity started and before defendant did any moving of the earth, and that at that time plaintiff was required to retain the banks of earth he created along defendants' north property line and thereby provide lateral support for defendants' land.

"The Court further finds that plaintiff was not required to provide lateral support for the huge bank of fill dirt that defendant moved into that area, some of which was atop the banks that plaintiff had created and some of which was in the valleys where no dirt had been piled before. The Court finds that it was the defendant who was then required to retain the fill dirt so as to prevent encroachment onto the plaintiff's land. Such a situation very logically requires a joint participation by these parties in the construction and maintenance of a proper retaining structure."

We are satisfied the foregoing is supported by the evidence and applicable governing principles.

Looking first to plaintiff's duty in connection with his excavation or cuts into the embankment, we said in *Pacific Indemnity*

*Company v. Rathje,* 188 N.W.2d 338, 340 (Iowa 1971):

"With regard to excavating of land adjacent to that in its natural condition, 1 Am.Jur.2d, Adjoining Landowners, § 43, provides, to the extent here material:

" 'A landowner has the right to excavate on his own land. He may excavate his land up to the boundary line and use the soil as he chooses, provided he furnishes by artificial means the support thus removed. It is well settled that the owner of land is entitled to have it supported and protected in its natural condition by the land of his adjoining proprietor, and one who excavates or improves the adjoining land is under a correlative duty so to use his land that his adjacent neighbor's soil will not crumble or cave in of its own weight.'

"And 1 Am.Jur.2d, Adjoining Landowners, § 44, says in part:

" 'The liability of an adjoining owner for the removal of lateral support from his neighbor's land in its natural state is not dependent upon the lack of skill or care he exercised in making the excavation, but is absolute. An adjoining landowner who by making an excavation takes away the lateral support of his neighbor's ground so as to cause it of its own weight to fall, slide, or break away, is liable for the injury regardless of how carefully he excavated.' "

Turning next to defendants' responsibility regarding fills and grading on their land, we note this apt statement in 1 Am.Jur.2d, Adjoining Landowners, § 27 at 709:

"An owner who by filling raises his land above the level of adjoining land is under a duty to keep soil used in so raising his land off adjoining land. He cannot fill up his own lot in such a manner as to let the earth pass or slide over his line onto the lot of his neighbor; if he does so, he is liable for the resulting damages. He is bound to build a retaining wall or other

structure if necessary to keep the soil within his own line; such wall or other structure cannot be erected on the adjoining land, but must be built entirely on the land of the one raising his grade. The adjoining owner cannot be compelled to pay any part of the costs of a wall or structure necessary to hold the raised land of his neighbor."

In light of the foregoing, it is apparent each party hereto had a correlative duty to the other. It is equally evident (1) these duties were breached and (2) no corrective "agreement" was ever effectuated.

Significantly, however, plaintiff and defendants concede a property line retaining wall should be built. In keeping therewith and as a practical solution of the controversy, trial court ordered:

"* * * that the parties to this action shall, within 30 days from the date of this Decree, each employ, at their own individual expense, an architect, engineer or such expert as they individually feel competent to represent them, who shall be authorized to design, supervise construction of and construct on the property line between the two properties a retaining wall. Said retaining wall shall be of sufficient height and strength to hold the embankment of earth in place and adequately prevent its erosion or spilling onto plaintiff's property and adequate to provide lateral support for the defendants' property. The experts so hired by the parties, in the event of serious disagreement between them as to the kind of wall required, shall themselves select a third qualified expert to assist them and the decision of two of the three experts will be final and will be followed. The expenses of the third expert, if one is needed, shall be paid by the parties as a part of the cost of planning, construction and maintenance of the retaining wall, to-wit: one-third of all such costs including the planning, construction and maintenance of the wall is to be paid by the plaintiff and two-thirds of said costs is to be paid by the defendants. The financing of their individual shares of such costs shall be the individual responsibility of the parties."

And,

"* * * that the planning, design and construction of said retaining wall shall begin immediately upon the selection of the experts referred to and the wall is to be completed within the next six months. Failure of either party to comply with this order and Decree in the employment of a representative expert within 30 days will be authorization for the other party to proceed alone to carry out the Decree of the Court and a judgment for the proportionate share of the cost of such wall will be entered by the Court against the errant party upon proper showing."

Plaintiff takes the position his portion of the wall construction cost should be limited to $7875, a 1965 estimate for a stone retaining structure after plaintiff had cut into the natural embankment but before defendants had filled and graded near the property line. At that time, however, defendants' engineer opined a stone wall would not provide enough support, and further negotiations proved fruitless.

We cannot accept plaintiff's proposal. In brief, plaintiff invited much of the erosion of which he now complains. Defendants' filling operations ensured the invitation would not go unheeded. In other words, fault is attributable to both plaintiff and the parties defendant. But, there can be no precise mathematical determination as to the degree of each combatant's contribution to this "seven years' war", as aptly described by trial court.

Extended discussion is needless. Simply stated, we are persuaded trial court fairly balanced the equities in holding the wall construction cost be shared by plaintiff and defendants in the proportions above set forth. Such disposition is deemed a just

solution of the troublesome problem which these parties were unable, or perhaps unwilling, to amicably resolve. Also obviated is any present need for injunctive relief sought by plaintiff as to the dirt embankment. See *Ferrari v. Meeks,* 181 N.W.2d at 206.

■ Finally on this subject, trial court's retention of jurisdiction to the end that the instantly involved litigation be equitably terminated is appropriate. See *Northwestern Bell Tel. Co. v. Cascade Tel. Co.,* 234 N.W.2d 130, 137 (Iowa 1975); *Lovrien v. Fitzgerald,* 245 Iowa 1325, 1328, 66 N.W.2d 458 (1954); *Donnelly v. Nolan,* 235 Iowa 30, 33, 15 N.W.2d 924 (1944); 30 C.J.S. Equity § 67.

Plaintiff's instant assignments are devoid of substance.

■ X. Neither is there merit in plaintiff's assertion he is entitled to judgment against defendants for exemplary damages. Nothing in the record would support such an award. Each party to this action has manifested some degree of apathy as to the rights of the other. But there is no adequate showing made upon which to hold malice, actual or legal, is attributable to defendants. See *Earl v. Clark,* 219 N.W.2d at 491–492, and citations.

XI. Other issues here raised by plaintiff have been duly considered and found to afford no basis for a reversal.

Costs are taxed one-third to plaintiff, two-thirds to defendants.

Affirmed as modified and remanded with instructions.