Theodore W. ANDERSON and Paul D. Smith, Appellees and Cross-Appellants,

v.

Stanley A. YEAROUS and Mrs. Stanley A. Yearous, Appellants and Cross-Appellees.

No. 2–57435.

Supreme Court of Iowa.

Jan. 19, 1977.

Traeger & Koempel, West Union, for appellants-cross-appellees.

Miller, Pearson & Gloe, Decorah and Antes & Antes, West Union, for appellees-cross-appellants.

Heard by MOORE, C. J., and RAWLINGS, REES, REYNOLDSON and McCORMICK, JJ.

RAWLINGS, Justice.

Plaintiffs, Theodore W. Anderson and Paul D. Smith, brought action in equity seeking, by injunction, the removal of a surface water nuisance-obstruction created by defendants, Stanley A. Yearous and Mrs.

Stanley A. Yearous. Plaintiffs also seek damages caused by water blockage. Defendants appeal and plaintiffs cross-appeal from trial court adjudication. We affirm on both appeals.

The involved two parcels of adjoining land are located near Wadena in Fayette County. Plaintiffs' property (dominant estate) lies generally west of defendants' farm (servient estate).

Surface water from hills to the north empty into a drainage ditch constructed in the early 1940's by plaintiffs' grantors so as to channel the flow easterly along their property line. In turn, defendants' grantor trenched a furrow eastward across the servient property in order to carry the aforesaid ditch water to the Volga River.

In 1959, defendants purchased their land. In 1963, they caused an earthen levee to be erected, extending more than 800 feet along plaintiffs' easterly boundary, in order to stop the flow of water from the west.

Plaintiffs acquired their property in 1968 and encountered no trouble in farming the northeast corner until 1972. In May of that year, Yearous "patched" holes in the levee and leveled it off to a uniform height of about five feet. The northeast corner of plaintiffs' property was resultantly flooded causing crop damage. The instant action was thereupon commenced.

By their petition plaintiffs, as aforesaid, request (1) issuance of an injunction requiring removal by defendants of the levee; (2) defendants be permanently enjoined from obstructing the natural water flow; (3) damages by reason of flooding due to water blockage; and (4) such other orders as are just.

Defendants, in answer, allege said causes of action stand barred by the statute of limitations, and invoke estoppel.

In support of a reversal defendants contend, (1) plaintiffs failed to prove essential allegations of their original petition; (2) trial court erroneously granted relief to plaintiffs on a theory not pled by them; (3) the instant action was barred by an applicable five year statute of limitations; and (4)

the evidence does not support a decree ordering removal of the levee.

By cross-appeal plaintiffs maintain the damages awarded them are inadequate.

■ I. Our review is de novo. See Iowa R.Civ.P. 334. We give weight to trial court's findings but are not bound by them. See *Tamm, Inc. v. Pildis*, 249 N.W.2d 823 (Iowa 1976); Iowa R.Civ.P. 344(f)(7). And, as stated in *City of Des Moines v. Harvey*, 243 N.W.2d 606, 610 (Iowa 1976): "If the judgment in an equity case is correct, it is our duty to affirm it although the basis upon which the trial court reached its result may not meet with our approval."

II. By their first two assignments, defendants urge, in substance, allegations contained in plaintiffs' original petition and attendant testimony do not warrant the relief granted them.

■ Defendants first maintain plaintiffs' action was grounded upon the theory that a natural watercourse flowed easterly along plaintiffs' north boundary and by erection of the levee defendants wrongfully obstructed this drainage. Then, continues the argument, trial court mistakenly premised its decree upon plaintiffs' right to drain water from an artificial course onto the land of another. This latter approach, say defendants, burst upon them as an unexpected judicial bombshell.

Defendants supportively lean on this statement in *Skemp v. Olansky*, 249 Iowa 1, 6, 85 N.W.2d 580, 583 (1957):

"It is true that even though the special relief prayed for in an action in equity is not supported by the evidence, a request for general equitable relief may often justify the court in awarding other relief, and that such a request is generally to be granted liberally. But the rule is not without limitations. 19 Am.Jur., Equity, section 227, pages 181, 182; 30 C.J.S. Equity § 607, pages 1003, 1004; *Paintin v. Paintin*, 241 Iowa 411, 413–415, 41 N.W.2d 27, 16 A.L.R.2d 659, and cases cited. The relief granted under the general prayer must be consistent with the case made by the pleadings and must be

such as will not surprise the defendant. He must have an opportunity to defend against whatever relief may be granted against him; it will not be granted if there is nothing in the prayer of the bill or in the facts asserted in the pleadings which fairly apprizes him that such relief is asked or may be granted against him. Fairness in the trial of the case demands that much."

In adopting the position thus taken, defendants first apparently overlook this portion of plaintiffs' second amendment to answer.

"At the time that the plaintiffs purchased the aforesaid real estate a ditch or waterway ran in an easterly direction from a point near the center of the dike which was constructed by the defendants * * *. Prior to the year 1940 the water naturally flowed off the property now owned by the plaintiffs and onto the property now owned by the defendants. Prior to the year 1957 the defendants' grantors both immediate and remote maintained a ditch or waterway through their property to convey the natural drainage from the property now owned by the plaintiffs across the property now owned by the defendants. The defendants had full knowledge and were fully aware that the real estate that they acquired in the year 1959 was lower than the property now owned by these plaintiffs and that defendants' property was subject to the natural flow of water off the higher ground to the west now owned by the plaintiffs. The defendants were well aware of and had knowledge of the fact that the lands they purchased in 1959 received the natural flow of water from the plaintiffs' higher land and that the natural flow of water flowed in an easterly direction off the plaintiffs' land and across the defendants' lower land and then into the Volga River. The defendants erected said dike or levee on or about May 11, 1972, so as to repell the natural flow of surface waters onto the defendants' land where they had flowed for more than thirty years and that the construction of said levee by the defend-

ants has resulted in the ponding of large amounts of water on plaintiffs' property resulting in and will further result in causing continuing and irreparable damages in the future."

It is to us apparent, the above allegation, voiced prior to trial, fairly alerted defendants to the fact that plaintiffs would rely, in part, on an asserted right to continued usage of the above noted ditch drainage system.

Moreover, by reply to defendants' answer, plaintiffs allege there had existed for many years a trench maintained by defendants' grantor, which carried drainage water from plaintiffs' northerly ditch across defendants' land to the Volga River. Then too, considerable testimony was adduced concerning said north property line ditch which had been constructed in the early 1940's. Indeed, defendants concede, "the issue of whether or not there was an artificial channel, at least at one time, was tried out".

We are satisfied the parties hereto did try the issue as to rights attendant upon an existing artificial watercourse, and it was rightfully in the case. See *Harper v. Cedar Rapids Television Co., Inc.*, 244 N.W.2d 782, 786–787 (Iowa 1976); *Iowa Dept. of Rev. v. Iowa Merit Employ. Com'n.*, 243 N.W.2d 610, 616 (Iowa 1976); *Theobald v. Weber*, 259 Iowa 452, 457, 143 N.W.2d 418 (1966).

■ Additionally, plaintiffs seek such other relief as is just. In this regard we have held appropriate redress may be had upon facts pled and proved, even though such relief has not been specifically sought. See *Pearson v. City of Guttenberg*, 245 N.W.2d 519, 533 (Iowa 1976); *Iowa City v. Muscatine Development Co.*, 258 Iowa 1024, 1031, 141 N.W.2d 585 (1966).

■ It is also well settled such a prayer is to be liberally construed and will often justify a grant of relief in addition to that contained in the specific prayer, provided it fairly conforms to the case made by pleadings and proof. See *Braverman v. Eicher*, 238 N.W.2d 331, 335 (Iowa 1976); *Holi-Rest,*

*Inc. v. Treloar,* 217 N.W.2d 517, 526–527 (Iowa 1974).

■ Briefly stated, the relief accorded plaintiffs was not confined to their original petition. Rather, trial court resolved the matter upon the case made by all the pleadings and evidence adduced in course of trial.

Even more significantly, plaintiffs, as demonstrated *infra,* did establish an easement by prescription for the flow of water from their north line ditch into the trench or furrow on defendants' land and this initially artificial watercourse ripened into a natural waterway, thus buttressing plaintiffs' original petition. See *Nixon v. Welch,* 238 Iowa 34, 39–40, 24 N.W.2d 476 (1946). See also *Perkins v. Palo Alto County,* 245 Iowa 310, 315, 60 N.W.2d 562 (1953); Code § 465.22.

Defendants had adequate opportunity to defend as to the case made by plaintiffs and their claimed surprise at the result obtained blow is deemed spurious.

Defendants' first two assignments are without merit.

III. Next considered is the issue raised by defendants relative to applicability of Code § 614.1(4), our property damage five year statute of limitations.

In substance, defendants posit the levee is a permanent structure erected in 1963 and the limitation period expired in 1968, but the instant action was not commenced until 1972.

■ It is at once evident the view espoused by defendants is based upon a faulty concept. Although the levee may be characterized as a permanent structure, its construction date is not the determinative factor. Where resultant injuries are recurring and successive actions will lie, the limitation period runs from the occurrence of each such injury. See *Eppling v. Seuntjens,* 254 Iowa 396, 404, 117 N.W.2d 820 (1962); 78 Am.Jur.2d, Waters, §§ 366–368; 93 C.J.S. Waters § 36(4); Annot., 5 A.L.R.2d 303, 322–323.

■ But defendants insist *Thomas v. Cedar Falls,* 223 Iowa 229, 272 N.W. 79 (1937),

mandates application of Code § 614.1(4) from time of construction because resultant injuries were then readily predictable. Continuing viability of the *Thomas* holding is at best doubtful. See *Archer v. Compton,* 238 Iowa 1182, 1188–1192, 30 N.W.2d 92 (1947). See also *Eppling v. Seuntjens, supra.*

In any event, *Thomas v. Cedar Falls, supra,* is inapposite. As here testified by one witness, the five years following construction of the levee were "some of the driest * * * I think we have ever had". Consequently, the injury of which defendants complain was not readily predictable when the levee was built.

Due to the fact plaintiffs commenced this action in 1972 because of damages which then arose, the defense asserted statute of limitations does not apply.

IV. As postulated by defendants, the question now posed is whether the evidence supports trial court's findings and conclusions of law. We approach this issue mindful of the fact our review is de novo and affirmance is in order if the result reached below was correct, though based upon a premise at variance with our theory.

Trial court found plaintiffs' and defendants' respective grantors agreed upon a drainage system in the early 1940's. This involved the digging of a ditch along the north line of property now owned by plaintiffs (Anderson) which would carry surface water easterly onto land presently held by defendants (Yearous). That defendants' predecessor in interest sequentially plowed a channel across the Yearous tract so as to carry water flowing from the aforesaid ditch to the Volga River. Trial court also concluded said agreed drainage system had existed for more than 10 years before defendants acquired their servient farm. Thereupon the court below held defendants' man-made dike unreasonably obstructed a time-honored flowage system from plaintiffs' land which in turn constituted an enjoinable nuisance. See generally *Braverman v. Eicher,* 238 N.W.2d at 335; *McKeon v. Brammer,* 238 Iowa 1113, 29 N.W.2d 518

(1947); *Hayes v. Oyer*, 164 Iowa 697, 146 N.W. 857 (1914).

■ Defendants contend, however, there was never an *agreement* for drainage of waters as above described. Even if this were conceded there could still be an enforceable waterway across defendants' land by prescriptive right. See *Gilmore v. New Beck Levee District, Harrison County*, 212 N.W.2d 477, 479–480 (Iowa 1973), and citations.

In that respect, we have held an easement may be effectuated by (1) express written grant; (2) prescription; or (3) implication. See e.g., *Schwenker v. Sagers*, 230 N.W.2d 525, 527 (Iowa 1975).

■ And a prescriptive easement may be created by adverse possession under claim of right or color of title, openly, notoriously, continuously and hostilely asserted for ten years or more. Of course, mere usage does not establish adverse possession. Rather, a party claiming an easement by prescription must prove, independent of use, an easement was claimed as a matter of right, and the other party had express notice thereof, either actual or from known facts of such nature as to impose a duty to make inquiry which would reveal existence of an easement. See *Tamm v. Pildis*, 249 N.W.2d 823 (Iowa 1976); *Gilmore, supra*, 212 N.W.2d at 479; § 564.1, The Code, 1973.

This court has also held there may be a prescriptive easement where the original use was with a servient owner's consent and usage as of right has continued for more than ten years. See *Loughman v. Couchman*, 242 Iowa 885, 47 N.W.2d 152 (1951); *Hayes v. Oyer*, 164 Iowa at 700–702, 146 N.W. 857; cf. *Simonsen v. Todd*, 261 Iowa 485, 488–489, 154 N.W.2d 730 (1967).

V. Bearing in mind those principles above stated the record evidence will now be evaluated.

The first problem to be resolved is whether plaintiffs established a flowage easement across defendants' property. Defense witness, John Erickson, testified on direct examination plaintiffs' grantors dug a ditch along the north side of their land. On cross-examination he stated defendants' predecessor in title plowed a furrow eastward across his property in the same year the plaintiff-related ditch was effected.

A 1957 aerial photo reveals the trench across defendants' farm still existed. Thus the record discloses existence of the involved drainage system for at least 14 years.

■ But was this servitude known to defendants or obvious? Erickson also testified he knew of no agreement regarding establishment of the above described drainage system. It still remains, however, defendant Stanley Yearous testimonially stated, over timely hearsay objection, his grantor had told him:

"* * * it was an artificially dug ditch down through his property, and that water had been dumped onto him and he had kind of taken it unsuspectingly, and I think he was kind of ashamed about the whole thing, ashamed to even show it to me. He felt bad about it and he said it was a mistake that he had made and he was sorry that he even had to show me this."

In brief, no error attended admission in evidence of the aforesaid testimony. More specifically, the noted statement by defendants' predecessor constituted an admission in disparagement of his interest in land and those holding under him (defendants). See *Egan v. Egan*, 212 N.W.2d 461, 465–466 (Iowa 1973).

■ Actions consistent with plaintiffs' claim of drainage right across the servient estate were further revealed when defendant Stanley Yearous testified regarding a visit with the administrator of plaintiffs' grantor's estate. This testimony was, in essence, that before construction of the subject levee Yearous visited said estate representative, and in explanation thereof stated:

"It was my intention to inform him that my ditch was silted full and if I didn't clean mine, it was going to silt his full, and we had a problem there and maybe we could figure out something to settle it.

" * * * *

"I said to him, 'We have a problem down there with this ditch that was sludged that come onto my property' and he said, 'Well, if that is what you are here for, out you go,' and that was it. That was the total, final—It didn't take over five seconds. He suspicioned, I suppose, ahead of time I come there for some reason or another, and I suppose when I got to the point, he was ready for me. Maybe he knew the ditch was sludged, I don't know. Maybe—"

Yearous further admitted he built the dike in order to force the administrator to come to him.

The foregoing unquestionably established an adverse use and claim of right by plaintiffs to drain water onto defendants' land for the prescriptive period. See *Schwenker v. Sagers*, 230 N.W.2d at 528.

It also reveals such claim of right usage was both open and notorious and at all times known to defendants and their grantor. See *Gilmore v. New Beck Levee District, Harrison County*, 212 N.W.2d at 479; Burby on Real Property, § 31 at 80–81 (3d ed. 1965); Annot: 55 A.L.R.2d 1144, 1166.

VI. A subsidiary question presented relates to continuity essential if a prescriptive right is to ripen into an easement. Defendants argue the drainage system did not operate for the full prescriptive term. In support thereof they primarily invoke John Erickson's testimony. From 1938 to 1950 he "worked" defendants' land. This witness stated defendants' grantor never got his ditch to take water because the land was too flat. Mr. Yearous also testified the furrow was sludged almost full when he bought the farm.

Looking to the other side of the coin, both of these witnesses testified as to facts lending support to continuity in usage of the drain on defendants' property. For example Erickson said: "[A] flood like we had in 46, everything went clear to the river then." And, Mr. Yearous stated:

"[I]t was a ditch that would not keep itself clean, had to be cleaned approxi-

mately every year, and I had to make a decision of whether I was going to keep on cleaning this ditch so the Leahy estate [plaintiffs' grantors] could dump their water into it, or make some other arrangements for disposing of the water * * * *."

This witness further explained: "Mr. Schmidt (defendants' grantor) told me he tried to maintain a ditch through here * * * it appeared to have been cleaned so many times that it was actually built up high in the center * * *."

Added to all this, defense witness William Moellering said the furrow looked like a drainage way and was probably man-made.

■ Admittedly, a substantial break in continuity will prevent acquisition of a prescriptive easement. See *Schofield v. Cooper*, 126 Iowa 334, 339–340, 102 N.W. 110 (1905). On the other hand, mere intermittent silting of a drainage ditch is not to be equated with abandonment of an easement. See *Hatton v. Cale*, 152 Iowa 485, 493–497, 132 N.W. 1101 (1911). This is particularly true where, as here, the drainage way continued to carry off water as necessities required. See 78 Am.Jur.2d Waters, § 353; 93 C.J.S. Waters § 161 at 887–888.

■ As aptly stated in *Starrett v. Baudler*, 181 Iowa 965, 978, 165 N.W. 216, 220 (1917): "It is not the essence of this test (continuity), as applied to a water course, that the water should flow of itself continuously, but the test is that the artificial apparatus by which its flow is produced is of a permanent nature." Requisite continuity was here adequately manifested.

VII. Defendants also claim plaintiffs failed to prove their north property line ditch had been operational and water therefrom flowed into the outlet on defendants' farm for more than ten years immediately prior to commencement of this action. Abandonment is the basic contention. In taking this stance defendants rely on *Logsdon v. Anderson*, 239 Iowa 585, 30 N.W.2d 787 (1948).

But in *Logsdon, supra*, the artificial diversion ditch was located entirely on the

defendants' land. More particularly, *Logsdon* falls within the general rule that it is encumbent upon a property owner to prevent his ditch from becoming obstructed when such will result in putting an undue flowage burden upon an adjoining owner. In other words, maintenance failure resulting in injury to another was held to justify a damage award. *Id.*, 239 Iowa at 592–593, 30 N.W.2d 787.

Pursuing the subject at hand further, it is conceded a prescriptive easement once acquired may be dissipated by abandonment. See *Hatton v. Cale*, 152 Iowa at 496–497, 132 N.W. 1101.

■ Even so, a vested easement by prescription can only be lost by at least ten years of continued nonuse accompanied by facts and circumstances clearly indicating an intentional relinquishment. See *Harrington v. Kessler*, 247 Iowa 1106, 77 N.W.2d 633 (1956); *Hatton v. Cale, supra.*

■ As previously stated, a 1957 aerial photo discloses the trench across the Yearous land existed at that time. Nevertheless, defendants argue no evidence was introduced revealing existence thereof shortly before commencement of plaintiffs' action. It is supportively urged Mr. Yearous testified said trench was almost silted full in 1959 when the servient estate was acquired. It is additionally contended, there is testimony by another witness to the effect plaintiffs' north ditch did not extend to the northeast corner of their land and water therefrom flowed southeasterly from a point 200 feet west of the northeast corner of plaintiffs' dominant estate.

Be that as it may, the record still fails to show requisite intent on the part of plaintiffs or their predecessors in interest to abandon the existent drainage easement across defendants' land. At best, the record manifests nothing more than an apparent ineffective slight deviation. See Annot., 80 A.L.R.2d 1095, 1097–1098.

We are satisfied the record fails to sustain defendants' asserted abandonment.

■ VIII. No useful purpose will be served by an extensive discussion of defendants' claim that plaintiffs were accorded nothing more than a revocable license to drain the water onto the servient estate.

In the case at bar, the record discloses plaintiffs' predecessors in interest engaged machinery to dig the ditch along their northern boundary. This perforce involved a substantial expenditure of money and labor in reliance upon the servient owners' acquiescence. See *Simonsen v. Todd*, 261 Iowa at 489–495, 154 N.W.2d at 733–736; Burby on Real Property, § 39 at 96.

Moreover, as heretofore demonstrated, plaintiffs effectively established an open, visible, continuous and unobstructed use for the period required to create a prescriptive easement. Therefore, the burden was upon defendants to show existence of a mere license and in this they failed. See *TeSelle v. Storey*, 133 Mont. 1, 319 P.2d 218, 220 (1957).

The instant factual situation clearly precludes application of the revocable license precept.

■ IX. Finally, as a result of our de novo review on defendants' appeal, we are persuaded, (1) plaintiffs did acquire a lawfully recognized easement by prescription permitting an unobstructed flow of water from their north boundary line dominant estate ditch into the trench or furrow located on defendants' servient estate, thence to the Volga River; (2) this easement was never abandoned; and (3) trial court's decree ordering removal by defendants of the instantly involved obstructing dike or levee must stand.

■ Noticeably, trial court found existence of the aforesaid easement by agreement whereas we today hold the record establishes an easement by prescription. In light of the fact the same result is reached in each instance, an affirmance on defendants' appeal is mandated. See *City of Des Moines v. Harvey*, 243 N.W.2d at 610.

X. We now focus upon plaintiffs' cross-appeal. They thereby submit the monetary damage award to them is inadequate. Noticeably, defendants neither appeal on this issue nor do they here address the subject.

Ordinarily the matter at hand would stand in law. In this case, however, it was allowably made a part of plaintiffs' equity action and absent a motion for transfer to the law forum it remains as pled. See generally *Claeys v. Moldenschardt*, 169 N.W.2d 885, 889 (Iowa 1969). See also *Kellerhals v. Kallenberger*, 251 Iowa 974, 981, 103 N.W.2d 691 (1960). And, as observed in *Greenstreet v. Clark*, 239 N.W.2d 143, 148 (Iowa 1976):

" '[O]nce equity has obtained jurisdiction of a controversy it will determine all questions material or necessary to accomplish full and complete justice between the parties, even though in doing so it may be required to pass upon some matters ordinarily cognizable at law.' "

See also *Local Bd. of Health, Boone County v. Wood*, 243 N.W.2d 862, 866 (Iowa 1976). Compare *Kriener v. Turkey Valley Community School Dist.*, 212 N.W.2d 526, 536–537 (Iowa 1973).

Trial court found:

"In this case, the plaintiffs claim damage only for the years 1972 and 1973. They estimated their damage in the neighborhood of seven acres in 1972 and eight to ten acres in 1973. Defendants' witnesses placed the damage in the neighborhood of one-half acre. After viewing the premises the Court feels that the estimate of the plaintiffs is too high and the estimate of the defendants is too low. The Court's conclusion is that the plaintiffs suffered a loss of one acre in 1972 and two acres in 1973. Assuming a production of 120 bushels per acre in each year and a corn value of $1.30 in 1972 and $2 in 1973, the gross damage would be $636. The Court has deducted from that the sum of $381.60 for cost of production, leaving a damage owed by the defendants to the plaintiffs of $254.40.

Plaintiffs postulate the foregoing award is deficient because (1) total crop damage, (2) partial crop damage, and (3) special damages were overlooked or in any event erroneously computed.

An extensive narration of the underlying factual situation as it pertains to the present question would only serve to needlessly extend this opinion.

The accepted standards by which to determine tortious total and partial crop damage are set forth in *Martin v. Jaekel,* 188 N.W.2d 331, 335–337 (Iowa 1971) and need not be repeated.

In brief, our examination of the record reveals plaintiffs' crop injury testimony consisted of nothing more than speculative conclusory estimates devoid of (1) any deduction for value and amount of labor and expense that would have been required in order to care for and mature a total crop loss and (2) reduction in amount and value of labor and expense attributable to the conjectural yield attendant upon a partial crop loss.

This means we are called upon to effect an impossible corrective evaluation without benefit in each instance of essential ingredients. Stated otherwise, plaintiffs failed to establish the amount of their alleged crop damage claims, total or partial, with the requisite degree of certainty. See generally *Earl v. Clark,* 219 N.W.2d 487, 490 (Iowa 1974).

Additionally, there is no basis upon which to effectively separate plaintiffs' testimony into reasonably ascertainable total versus partial crop loss categories.

Referring next to alleged special damages, the record is even more deficient. Plaintiffs first point to expenses attributable to the freeing of mud-mired field equipment. But the only testimony in this area again consists of speculative conclusory estimates. Essentially, plaintiffs' supportive witnesses generally described the situation, then opined machinery was stuck three or four times, both in 1972 and 1973, and somewhere from an hour to half a day was spent on each occasion in the extricating process at an estimated cost of $100 per hour. This again creates an unfathomable premise upon which to determine with a reasonable degree of certainty any special damage to which plaintiffs may be entitled. See *Conley v. Warne,* 236 N.W.2d 682, 687–688 (Iowa 1975).

Finally, on the subject at hand, plaintiffs contend they should have recovery for flood-related soil erosion. However, this claim is totally devoid of testimonial support. No evidence was presented which provides a rational basis for ascertainment with any degree of certainty that the asserted erosion destroyed a reasonably determinable amount of plaintiffs' land or rendered it valueless. See *Eppling v. Seuntjens,* 254 Iowa at 403, 117 N.W.2d 820.

As previously noted, defendants have neither appealed as to damages awarded plaintiffs, nor do they here meet the issue raised by cross-appeal. This means defendants cannot now have benefit of a result more favorable than that which obtained below. See *Kellerhals v. Kallenberger,* 251 Iowa at 976, 103 N.W.2d at 692; cf. *Deaver v. Armstrong Rubber Co.,* 170 N.W.2d 455, 465 (Iowa 1969); *O. K. Tire and Rubber Co. v. Oswald,* 166 N.W.2d 749, 750 (Iowa 1969). See also *In re Estate of Larson,* 256 Iowa 1392, 1403, 131 N.W.2d 503 (1964).

Looking to the other side of the coin, plaintiffs are without right, upon the record discussed above, to have judgment for a sum greater than that granted them by trial court.

AFFIRMED ON BOTH APPEALS.