Earnest Dean WILLIAMS, d/b/a
Williams Masonry,
Plaintiff-Appellant/Cross-Appellee,

v.

HAIR STADIUM, INC., f/k/a Judy's Hair
Fashion, Inc.; Larry L. Hayes and Judy
D. Hayes, Defendants-Appellees/Cross-
Appellants.

No. 2–68419.

Court of Appeals of Iowa.

April 8, 1983.

Robert A. Nading, II, and Thomas N. Martin, Ankeny, for plaintiff-appellant/cross-appellee.

Larry J. Handley of Handley, Berry & Eisenhauer, Ankeny, for defendants-appellees/cross-appellants.

DONIELSON, Judge.

Plaintiff appeals from the judgment allowing defendants a $2500 setoff on their counterclaim for faulty workmanship in plaintiff's suit for money owed on a construction contract. On appeal, plaintiff, a subcontractor for the brickwork on the project, asserts that (1) the contract was allegedly between the general contractor and plaintiff, so defendant owners were not a party, not in privity with plaintiff, and not entitled to damages for a breach of an implied covenant of good workmanship; and (2) the owners' order to plaintiff to stop work on the wall was an election to rescind the contract, which bars them from recovering damages. We affirm.

This case was originally tried in equity and our review, therefore, is de novo. Iowa R.App.P. 4; *Anderson v. Yearous,* 249 N.W.2d 855, 858 (Iowa 1977). While we are not bound by the trial court's findings, we do give them weight, especially where the credibility of witnesses is involved. Iowa R.App.P. 14(f)(7); *Recker v. Gustafson,* 279 N.W.2d 744, 748 (Iowa 1979).

## I.

Plaintiff is a building contractor specializing in brickwork. He was given an oral contract by a general contractor to do the brickwork on a commercial building being built for defendants. The defendants evidently retained a right to approve the subcontractors and their work. Defendants made progress payments directly to plaintiff. After work on the wall was completed, but before plaintiff had finished the "piers and arches," he was fired. Apparently the work was done too slowly, and the mortar used on the wall varied in color, making it unsatisfactory to the defendants. The work was finished by another subcontractor. The defendants paid the general contractor the full agreed price for the building.

The plaintiff filed a mechanic's lien on the building and then commenced this suit to foreclose it, asserting that defendants still owed him $2,525.65. Defendants counterclaimed for failure to complete the contract in a workmanlike manner and for slander of title.

The case was tried to the court which found that defendants failed to pay plaintiff the full value of his services and materials. The court entered judgment for plaintiff for $2,525.65. However, it also held that the brick wall was built with mortar of varying color, was therefore defective, and that damages for this defect should be the cost of repair—held to be $2500. Therefore, the court ordered entry of judgment for plaintiff for $25.65. Plaintiff then instituted this appeal.

## II.

■ Plaintiff asserts that the trial court erred in permitting defendants to maintain the counterclaim since they were neither parties to, nor beneficiaries of the contract between the general contractor and plaintiff, the subcontractor. This is essentially the same argument urged by plaintiff in its motion for summary judgment. In a ruling on this motion the court rejected plaintiff's argument that defendants were not parties to the contract and not entitled to sue on it,

holding that in this equity case "general subrogation principles would allow a direct action by owners against a subcontractor."

It has been held that an owner may sue a subcontractor for breach of the subcontract when the subcontractor failed to provide building materials. *National Cash Register Co. v. Unarco Industries Inc.,* 490 F.2d 285 (7th Cir.1974). There the court held that the building owner was a subrogee of the contractor's cause of action for the breach and, therefore, had standing to maintain the action directly against the subcontractor. *Id.* at 286. The court noted that equity requires the ultimate responsibility for loss to be placed "upon the one on whom in good conscience it ought to fall, and to reimburse the innocent party who is compelled to pay." *Id.*

■ We find the language persuasive in the instant case. Moreover, the general rule is that one who is not a party to a contract cannot recover for its breach, unless he is a party to the consideration. *Casey v. Jesup Creamery Co.,* 224 Iowa 1094, 1096, 278 N.W. 214, 215 (1938). Here the owner apparently approved the hiring of the subcontractor plaintiff and made payments directly to him. Thus, he was clearly party to the consideration paid. Based on this fact and on basic equitable subrogation principles, we believe the defendant owners had standing to maintain the counterclaim for breach of contract against the plaintiff subcontractor.

## III.

■ The plaintiff also contends the court erred by failing to hold that defendants had elected to rescind the contract by ordering plaintiff to cease work on the wall. If a party seeks to rescind the contract he cannot also recover damages. *Beardsley v. Clark,* 229 Iowa 601, 607, 294 N.W. 887, 890 (1940). Rescission has been defined as a restitutionary remedy:

When neither party to the transaction has given anything to the other, rescission is restitutionary in and of itself, that is to say, rescission itself restores the

pre-existing state of affairs. Where one or both parties have given something to the other in the transaction, rescission calls off the deal, but restitution remains to be accomplished by whatever mode is deemed best suited.

Rescission may be accomplished by agreement of the parties, and some writers prefer to use the term only to refer to such an agreement. The professional usage, however, is broader, and includes any judicial rescission.

Dobbs, *Remedies* § 4.3 (1976). The restitution claim is not aimed at compensating the plaintiff, as is a claim for damages, but seeks to force "the defendant to disgorge benefits that it would be unjust for him to keep." Dobbs, *Remedies* § 4.1 (1976).

In the instant case the court found that plaintiff failed to perform in a timely manner and that the work was defective. The defendants terminated plaintiff as a result. It has been noted that, in such situations, the actual breaching party may be hard to identify in determining how damages should be awarded under the theory of restitution:

> It is frequently difficult to know who is in breach. The parties themselves may be uncertain of their rights. The landowner may believe that the contractor's delay constitutes a breach; but he can seldom be sure and he is not safe in terminating the contract for even the unreasonable behavior of the contractor. When the contractor's delay becomes intolerable the landowner may terminate the contract, but if the court feels the contractor's delay was not so great as to constitute a breach, the landowner finds that it is he, not the contractor who is in default.

> \* \* \* \* \* \*

> Perhaps a middle way is to permit the contractor to claim actual costs, but give to the landowner the right to limit recovery by the contract price. This would put the burden on the landowner to show an expected loss or that costs were in excess of the fair share for the portion of the contract actually completed.

Dobbs, *Remedies* § 12.24 (1976).

We believe the court in the instant case correctly awarded restitutionary recovery in accordance with the above principles. The defendants terminated plaintiff before the work was completed. It cost defendants $2500 to have another company complete the construction and repair any defective work. This amount was correctly set off against the amount plaintiff sought to recover, $2525.65, for the value of its work and materials. The general rule is that "[w]here the contractor is in default, having partially breached the contract by failing to complete it or by delivering defective work, . . . he recovers only after a deduction is made for the landowner's damages." *Id.* Accordingly, we affirm the judgment for plaintiff in the amount of $25.65.

AFFIRMED: