## COOK v. THE C., B. & Q. R. Co.

| | |
|---|---|
| 40 | 451 |
| 79 | 644 |
| 40 | 451 |
| 85 | 311 |
| 40 | 451 |
| 95 | 79 |
| 40 | 451 |
| 113 | 125 |
| 40 | 451 |
| 122 | 196 |
| 40 | 451 |
| 140 | 575 |

1. **Conveyance**: NOTICE. Where the owner of real estate had granted to a railroad company the right to dig a channel through his land. and while the work was in progress had conveyed the land to another: *Held*, that the nature of the work was such as to put the grantee upon inquiry respecting the authority under which it was prosecuted.

2. **Easement**: LICENSE. A written instrument granting a railroad company the right to dig a channel over the land of grantor creates an easement, not a revocable license.

3. ———: ———: ALIENATION. Upon alienation of the estate, such easement passed to the grantee.

## *Appeal from Monroe District Court.*

### TUESDSDAY, APRIL 27.

ON the 12th day of June, 1873, plaintiff filed in the Monroe Circuit Court his petition, in substance stating that he owns about fifty acres of land, through which Cedar Creek runs in a meandering direction, and over which extends defendant's railroad, crossing said creek at two points upon bridges numbers 83 and 84, so constructed as not to impede the flow of the creek.

That the Burlington and Missouri River R. R., under which defendant holds its road, wrongfully entered on said land in 1869, and dug two ditches, for the purpose of diverting the creek from its natural channel, the ditches being dug to within from four to six feet of low water in the creek. That defendant has begun to fill up the bed of the creek with earth at bridge 84, and is impeding the natural course of the creek, and causing it to run through said ditches, whereby about fifteen acres of plaintiff's timber land will be overflowed. The petition prays an injunction restraining defendant from removing earth from plaintiff's lands, and from filling the bed of the creek so as to impede its natural flow.

On the 12th of June, 1873, a writ of injunction was issued, and on the 9th of July, the defendant's motion to dissolve the

same was overruled, and plaintiff was ordered to file an additional bond of $1,000.

In August, 1873, a change of venue was granted to the Monroe District Court.

On the 6th of August, 1873, the injunction was dissolved because of a failure to obey the order of the court to file an additional bond in the sum of $15,000.

On the 13th of November, 1873, plaintiff filed a supplemental petition alleging that since the filing of the former petition defendant has filled the bed of Cedar Creek at bridge 84, diverting the creek from its natural channel, and that in freshets the water will flow through the larger or lower ditch mentioned in the original petition, and that, by said obstruction the water will be made to overflow plaintiff's timber lands.

That in the work of obstructing the creek defendant wrongfully entered upon plaintiff's adjacent lands, and removed a great quantity of earth. Plaintiff asks judgment for five hundred dollars for this trespass, and prays an injunction commanding defendant to remove the obstruction placed in the bed of the creek, and to return the waters of the creek to their natural channel.

Afterward plaintiff filed a second supplemental petition, alleging that since the filing of the first supplemental petition defendant has wrongfully removed the earth and material, from the larger or lower ditch, all along the length of the same, deepening it about four feet, for the purpose of turning the water of the creek through the same.

Plaintiff in addition to the relief asked in his original and supplemental petition, prays a writ of injunction requiring defendants to replace all earth and material by it excavated from said ditch.

The defendant's answer denies all wrongs and trespasses, admits the digging of the ditch, and filling of the creek at bridge 84, and claims the right to do so, under an authority granted by Isaac P. Babb. the plaintiff's grantor.

The court found that in 1868, Isaac P. Babb, then the owner of the real estate in petition described, for a valuable consid-

eration, by his written contract, granted to the Burlington and Missouri River Rail Road Company, the right to change the channel of Cedar Creek on his said real estate at a point between bridges 83 and 84.

That said company under said contract took possession of said real estate, and proceeded to dig a new channel for said creek with the full knowledge of said Babb. That plaintiff purchased said real estate with a full knowledge that Babb had made said contract, and the rights of the company thereunder. The plaintiff's petition was dismissed, and he appeals.

*Dashiell & Andrews*, for appellants.

*Perry & Townsend*, for appellee.

DAY, J.—I. The evidence is voluminous, covering over one hundred printed pages, and is quite conflicting. Yet we think it very clearly sustains the judgment of the District Court. The ditch constructed by defendant is a few feet south of its right-of-way, between bridges 83 and 84, and is about 400 feet long. It is sufficiently large and deep to allow the waters of Cedar Creek to flow freely, and it does not cause any backing of water or overflow of plaintiff's land. This the evidence clearly establishes.

It is proved that Isaac P. Babb, who then owned the property in plaintiff's petition described, executed a paper of which the following is a copy:

"For one dollar to us in hand paid we hereby consent to, and permit the Burlington and Missouri River Railroad Company to dig a channel for Cedar Creek, in Monroe county, Iowa, according to the annexed plan for the purpose of straightening said stream. Jan. 7th, 1868."

Plaintiff does not deny that the paper in question contemplated the digging of a ditch on the south side of the railroad track, between bridges 83 and 84, but he claims that at the time he executed this paper the plan referred to as annexed was not attached, and that one was to be attached by Hurlburt, engineer, of the B. & M. R. R. Co., corresponding with certain stakes at the time standing in the ground to mark the

location of the ditch, and that, if any plan was afterward attached by the engineer, it did not correspond with the line of the ditch, as designated by the stakes, and that the ditch, as constructed, is further upon his premises than was intended.

That a plan was attached to this paper, either when it was executed, or subsequently thereto, the evidence clearly shows; and it also quite satisfactorily appears that the location of the ditch corresponded with the general designation of the plan.

Although there is much conflict upon the point, yet we think the weight of the evidence and the circumstances of the case support the conclusion that the ditch is constructed upon the line originally designated by the stakes, and hence, that the plan, whenever attached, was in accord with the agreement of the parties. We mention a few of the circumstances which lead to this conclusion.

In 1869, T. S. Howland, a civil engineer, staked out the channel of the ditch for the workmen. At that time he found two stakes, one of which bore the marks of a center stake, and he so laid out the ditch that these stakes were in the center line of it. On the 12th of August, 1869, the contractor commenced work upon the ditch, employing twenty-five or thirty men and teams.

From the 10th of January, 1869, to the 14th of May, 1870, Isaac P. Babb resided in Pottawattamie county, but in the meantime he returned to Monroe county, and we are satisfied from the evidence that he went upon the premises described in the petition, and saw the work in progress, and that he made no complaint that the ditch was not being dug upon the contemplated line. The plaintiff's claim is, that the ditch was to be dug almost wholly upon defendant's right of way, which extended fifty feet south of the line of the road. It is not reasonable that the railroad company should desire to dig a ditch sufficient for the passage of a creek within so short a distance of their road, nor that they should ask permission of any one to dig a channel within their right of way.

Aside from all this, Babb admitted upon several occasions and to different parties, that the paper he executed granted the right to dig the ditch between bridges 83 and 84,

and he complained of the taking of timber and the digging of another ditch, for which he insisted defendant had no authority.

The plaintiff bought the land in April, 1870. At that time much progress had been made in the construction of the ditch. The nature of the work was such as to put him upon inquiry as to the authority under which it was prosecuted. He is affected with a knowledge of all the facts which prudent inquiry would have elicited, and must be presumed to have had full knowledge of the contract existing between his grantor and the railroad company. The record discloses many other considerations which cast great suspicion upon plaintiff's claim, and show it to be void of all real merit, but we deem it unnecessary to prolong the opinion so far as to discuss them.

*1. CONVEY-ANCE: notice.*

II. Plaintiff claims that the agreement executed by Babb at the most created but a mere license, revocable at pleasure, and not susceptible of transfer to defendant from the B. & M. R. R. Co., and that it was revoked by the conveyance of the land to Cook. Upon the other hand, appellee insists that the agreement created an easement, which is irrevocable, and which passed with a conveyance of the dominant estate.

*2. EASEMENT: license.*

A mere parol license is revocable at common law. But in some of the states, when the licensee has acted under the authority conferred and incurred expense in the execution of it, equity regards it as an executed contract, and will not permit it to be revoked. Washburne on Easements and Servitudes, 23, and cases cited. This seems to be the law in this state. *Wickersham v. Orr*, 9 Iowa, 253; *Beatty v. Gregory*, 17 Iowa, 109. Certainly this rule is fully in accord with the principles of an enlightened jurisprudence. For if a party could grant a license, and stand by until the licensee had incurred great expense preparing to enjoy the right conferred, and then revoke the license and deprive the other of all benefits of his labor and expense, it would, in the language of *Beatty v. Gregory, supra,* " be a shame and reproach to the law."

.An easement is a liberty, privilege, or advantage in land without profit, existing distinct from the ownership of the soil, and because it is a permanent interest in another's land, with a right to enter at all times and enjoy it, it must be founded upon a grant by writing or upon prescription. But a license is an authority to do a particular act or series of acts upon another's land, without possessing any estate therein. It is founded in personal confidence, and is not assignable nor within the statute of frauds. See 3 Kent's Commentaries, 8th edition, 565.

The distinction between a license and an easement is, oftentimes, very subtle and difficult to discern. But it is mainly important where the right in question is conferred in parol—and the question is whether the agreement creates a mere authority to do acts upon another's land, and hence may be given in parol, or creates a privilege in the land, and hence is void because not in writing. That question does not arise here.

We have here a written conveyance, informal it is true, but still sufficient to manifest the intention to grant a privilege in 3 ——: ——: the land, distinct from the ownership of the soil, and alienation. as contradistinguished from a mere authority to do an act or series of acts upon it. The agreement, we think, creates an easement and servitude which passes to the grantees of the respective estates, inasmuch as the grantee of the servient estate, as we have before seen, is affected with notice of the existence of the easement.

AFFIRMED.