ED. JOHNSON, Appellant, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellee.

**WATERS AND WATERCOURSES:** Surface Waters—Maintenance of
1· Railroad Bridge—Notice Implied. The *existence,* on a minor fractional part of a government 40-acre tract, of permanent improvements in the form of a railway bridge spanning a public drainage ditch constitutes implied notice to the purchaser of the remaining part of the said 40-acre tract of the unrecorded written contract right of the railway company to maintain said bridge in its then length and elevation *without liability in damages to the owner of the abutting land.*

**DEEDS:** Record—Failure to Record—Who May Complain. Principle
2  reaffirmed that the failure to record an instrument may not be taken advantage of except by one who pleads and establishes that he is a subsequent purchaser for value and without notice.

Headnote 1: 39 Cyc. p. 1751. Headnote 2: 39 Cyc. p. 1778.

*Appeal from Mills District Court.*—O. D. WHEELER, Judge.

JANUARY 18, 1927.

Appeal from a ruling on a demurrer to certain paragraphs of the defendant's answer. The opinion states the pleaded facts. The trial court overruled the demurrer, and the plaintiff, having elected to stand on the demurrer, prosecutes this appeal.— *Affirmed.*

*C. E. Dean* and *Cook, Cook & Cook,* for appellant.

*Byron Clark, Jesse L. Root,* and *W. S. Lewis,* for appellee.

DE GRAFF, J.—This cause comes to this court on an appeal from an adverse ruling on plaintiff's demurrer to certain paragraphs, presently noted, contained in the answer of the defendant. The controlling proposition involves the right of the defendant railroad company to assert its easement to maintain a certain steel-girder bridge about 80 feet in length at its present elevation, and the openings in its grades as they were on May 21, 1904, where its lines were then and are now extending

1. WATERS AND WATERCOURSES: surface waters: maintenance of railroad bridge: notice implied.

across the Missouri River bottom from a point east of Pacific Junction, Iowa, westerly to the Missouri River, without being answerable to the plaintiff for his pleaded damage.

Plaintiff, in his petition, seeks to recover damages in the sum of $1,091, predicated on acts of negligence of the defendant in maintaining the steel bridge on its right of way over what is known as Pony Creek Drainage Ditch, whereby, as is alleged, the free passage of water is obstructed and diverted from its natural course, causing the waters coming from the north down the said creek at times of heavy rains to overflow onto the farm lands adjacent thereto, including the plaintiff's farm. The petition alleges that, in the spring of 1924, the plaintiff suffered said damage to his crops on his farm by reason of the obstruction and diversion of water as aforesaid.

The pleaded facts, admitted or not challenged, disclose that plaintiff, a resident of Mills County, Iowa, is the owner of the southeast quarter of the southeast quarter of Section 20, Township 72 north, Range 43 west of the 5th P. M.; that he became seized in fee-simple title to said land, December 10, 1917; that, in said conveyance of said 40 acres, there was excepted a portion thereof commencing at the southeast corner of the southeast quarter of the southeast quarter, running thence north 580 feet, thence west 41.79 feet, thence in a westerly direction to a point on the south line of Section 20, which point is 219.49 feet west of the starting point, and thence west on the south line of said section to the point of beginning, and also excepting the defendant's right of way on the south side of said 40-acre tract; that the defendant is a corporation, organized and existing under and by virtue of the laws of the state of Illinois, and is engaged in operating an interstate line of railroad east and west through and across Mills County, Iowa; that its right of way is situated on the section line between Sections 20 and 29-72-43, which is immediately south of the land owned by the plaintiff; that, in 1902, the board of supervisors in Mills County established the Pony Creek Drainage District, which included within its boundaries the land of the plaintiff, and also the right of way of the defendant-railroad, where the same is located as adjacent; that, in pursuance of the establishment of said drainage district, a public improvement was constructed, consisting of a main ditch, known as the Pony Creek Drainage Ditch, for the carrying of

waters of Pony Creek, and that said ditch was located in the course of natural drainage; that said ditch, as constructed, crossed the line of the defendant's right of way between Sections 20 and 29 at a point approximately 800 feet west of the southeast corner of Section 20; that, at the point where the tracks of the defendant cross said ditch, the defendant has caused to be constructed a steel bridge, 80 feet long, for the purpose of carrying its tracks across said ditch; that the said line of railroad has been operated by the defendant for more than 50 years last past, extending from the city of Chicago westerly through the state of Illinois and westerly through the state of Iowa to a connection with other lines of railway owned and operated by this defendant in the states of Nebraska, Colorado, and other states; that, by reason of the fact that the lands in Mills County contiguous to the defendant's right of way are wet, low, and flat, the defendant constructed its line of railroad, some 55 years ago, upon a bank or grade of earth from 6 to 8 feet above the level of the surrounding country; and that such openings as the defendant thought proper and sufficient were made, to accommodate the flow of surface water; and that the opening coincident with the line of said Pony Creek Ditch was created some 55 years ago; that the defendant neither requested nor aided in the construction of the said drainage ditch, but that said ditch has ever been either an extremely shallow ditch, shortly after its construction, or, thereafter, merely an aqueduct, and not a ditch; and that, in order to carry surface water diverted from its natural course of drainage in the territory in the northerly part of said drainage district, the board of supervisors in Mills County constructed wide and high dikes of earth on each side of said ditch, and thereby prevented surface water or water in the natural course of drainage from the lands over which the ditch was constructed from entering therein; that, during times of high water, the water would attain an elevation from 18 inches to 10 or 12 feet above the natural surface of the ground, and would cut through said dikes and pour down on plaintiff's land and other lands adjacent to said ditch; that said ditch and its dikes are and ever have been a nuisance, and are the cause of the damages concerning which plaintiff in his petition complains.

The paragraphs in defendant's answer to which the demurrer of plaintiff is directed, contain the following material

allegations: That, subsequently to the construction of defend-
ant's said railroad, controversies arose between the said de-
fendant and the owners of real estate lying northerly from de-
fendant's right of way in Mills County, Iowa; that, in 1904, one
L. H. Stroud was the owner of the land now owned by plaintiff,
except Railroad Addition to Pacific Junction in Mills County,
the same being the tract of land described in plaintiff's original
notice and petition; that suits were commenced against this de-
fendant, to recover damages for the construction and mainte-
nance of the defendant's line of railway from a point two miles
easterly of Pacific Junction, Mills County, westerly to the middle
of the Missouri River; that plaintiffs in said actions and the
said L. H. Stroud contended that, by reason of the construction
of defendant's said grades along said line, and because of the
number and condition of the openings in said grades for the
passing and flow of waters, their lands were overflowed, the
crops ruined, and the said owners damaged; that, on May 21,
1904, the said L. H. Stroud, for the southeast quarter of the
southeast quarter of Section 20-72-43 and other grantors in a
certain deed, did execute and deliver to this defendant a deed
of easement and release, to wit:

"Know All Men by These Presents: That we, the under-
signed, owners of the lands, a description of which is set op-
posite our respective names as signed herein, all of which lands
are situated in Mills County, in the state of Iowa, and we be-
ing a part of those who, in the year * * * either by ourselves
or prior owners of the lands, commenced actions against the
Chicago, Burlington & Quincy Railroad Company, and the
Burlington & Missouri River Railroad Company in Nebraska;
which said actions while pending in the circuit court of the
United States in and for the southern district of the state of
Iowa, western division, and in the district court of Fremont
County, Iowa, were settled and compromised by the payment of
money and for other good and valuable considerations, by which
settlement and compromise we, in the year 1886, executed cer-
tain deeds of quitclaim by which we released and forever quit-
claimed unto the Chicago, Burlington & Quincy Railroad Com-
pany the right to maintain its railroad, including its roadway,
embankments, fills, dykes, bridges and other appurtenances as
the same were then located, built and constructed through the

said county from a point two miles east of Pacific Junction in said county, to the center of the main channel of the Missouri River, and in further consideration of the payments aforesaid, remised, released and forever discharged the said railroad companies of and from any actions on account of damages that thereafter or which might thereafter accrue to us or our assigns or legal representatives by reason of the overflow of the said lands or any part thereof caused by the operation and maintenance of the railroad of the said railroad companies as the same were then located and constructed; and

"Whereas, it is now proposed to change certain bridges in said railway track and right of way in the locality above described; and

"Whereas, a certain county ditch or drain has been constructed for the purpose of carrying off water that has heretofore caused damage in said locality and we are desirous that said railroad company shall build an opening under its tracks spanned by a continuous steel bridge about 60 feet long, for the purpose of aiding in the maintenance of said ditch, and it is desirable further that bridge number 7 shall be entirely closed and bridge number 6 partially closed, said bridges being now existing under said track, and the situation changed so as to conform to the engineer's design or plat hereto attached.

"Now, therefore, in consideration of the sum of one dollar to each of us, the undersigned, in hand paid and in further consideration of the advantage to us and to the land occupied by us that such changes should be made, we hereby agree to the same and further agree to hold the said railroad companies harmless from any claim for damages which may hereafter accrue to us in the event that such change should cause the overflow of any of the lands held by us, and hereby release and forever quitclaim for ourselves, our heirs and assigns, forever, unto the said Chicago, Burlington & Quincy Railroad Company the right to maintain its railroad, including its roadway, embankment, fills, dykes, bridges and other appurtenances as the same may be changed so as to conform to the plat of the chief engineer of said railroad company hereto attached, closing bridge number 7 as now existing and fully closing spans one (1), seven (7) and eight (8) numbering from the east end of bridge number 6; to it the said railroad company, its successors and assigns forever.''

The demurrer in question challenges the pleaded unrecorded release executed by L. H. Stroud in the year 1904, and for grounds thereof states (1) that the said answer does not state that the plaintiff had any knowledge or notice, actual or constructive, of the Stroud agreement; (2) that the mere existence of the defendant's bridges and embankments along the south side of plaintiff's land was not sufficient notice to put the plaintiff on inquiry, at the time of his purchase of the said land, as to any right which the defendant might have acquired under the said unrecorded release of the said Stroud; (3) that the same is in no way defensive to the plaintiff's right to recover in this action, as he purchased the land described in his petition and received an abstract of title thereof, and there is no showing of any right of the defendant's under the Stroud release, and no showing in the chain of title to the said release of the existence of the said Stroud release; (4) that the said release was executed in 1904, and not placed of record until 1922, which was subsequent to the date upon which plaintiff acquired title and possession of said real estate; (5) that the deed whereby plaintiff acquired title to said real estate shows that the plaintiff was not the owner of land on which the defendant railway company maintained its right of way; (6) that there is no showing in the answer of defendant as to what title it held to the said real estate on which its right of way is situated, whether in fee simple, or whether the said railroad has merely an easement thereon.

Shall the ruling of the trial court in overruling the demurrer be sustained?  It may be observed at the outset that matters concerning which judicial notice is taken need not be stated in a pleading.  Section 11211, Code of 1924.  This is also the rule of common law.

It is said in 1 Wharton on The Law of Evidence (3d Ed.), Section 329:

"  *  *  *  a judge, in trying a case, must not only exercise his own logical faculties in construing and applying evidence, but he must draw on his own sources of knowledge for such information as is common to all intelligent persons in the same community."

In other words, the court is presumed to know what everybody in that community, of ordinary intelligence and informa-

tion, ought to know. *Gulf, C. & S. F. R. Co. v. Bostick* (Tex. Civ. App.), 233 S. W. 112, with cases cited.

The instant demurrer admits all well pleaded averments of the defendant's answer. It admits the deed of easement and release, the location of defendant's line of railway, and its long continued use. It admits the geography of the case and the physical environment.

In *Cook v. C., B. & Q. R. Co.*, 40 Iowa 451, it is held that the plaintiff was affected with the knowledge of all the facts which prudent inquiry would have elicited, and must be presumed to have had knowledge of the contract existing between his grantor and the railroad company. See, also, *Stodghill v. C., B. & Q. R. Co.*, 53 Iowa 341; *Ague v. Seitsinger*, 85 Iowa 305; *Hatton v. Cale*, 152 Iowa 485; *Yoos v. City of Rochester*, 92 Hun (N. Y.) 481 (36 N. Y. Supp. 1072).

In the instant case, the appellant contends that there are no recitations in his deed charging him with notice, nor grant in that instrument of any right to the railroad company's right of 2. DEEDS: record: way, nor does the source of defendant's title to failure to the real estate appear in the pleadings; and that record: who there is no charge that plaintiff had actual no- •may complain. tice of appellee's easement, and that the fact that the southern boundary of plaintiff's land was the northern boundary of defendant's right of way does not charge him with notice of the railroad company's easement. We cannot view this contention with favor. It is immaterial that the defendant-railroad company did not plead its source of title. It was impleaded as a defendant, and charged with maintaining a bridge with insufficient elevation upon its right of way to pass flood waters.

The plaintiff does not plead that he is a bona-fide purchaser without notice, for value, of the land purchased by him in 1917. To secure this protection, he should have pleaded the facts. *Blackman v. Henderson*, 116 Iowa 578; *Zacharia v. Cohen Co.*, 140 Iowa 682. The demurrer raised no such shield for his .protection.

It is a well established principle that notice is either knowledge or having means of knowledge, although such means may not be used. One who purchases land, with knowledge of such facts as would put a prudent man upon inquiry which, if prosecuted with ordinary diligence, would lead to actual notice of

rights claimed adversely by another, is chargeable with the actual notice that he would have received.

There is a notice which may be termed implied, although it does not include either positive knowledge or information so direct as to carry conviction to the mind of the person notified. In a strict sense, it is different from constructive notice, which it greatly resembles. However, constructive notice is a creature of positive law, and rests upon strictly legal inference. Implied notice arises from inference of fact, but it may be said that both have the same legal effect. See *Cooper v. Flesner*, 24 Okla. 47 (103 Pac. 1016, 23 L. R. A. [N. S.] 1180, with note).

It must be held that the location of the drainage ditch with its existing dikes, the width of the openings, the elevation of appellee's bridge over that opening in connection with the permanent character of the bridge and the roadbed, and the condition of the waterway under the bridge, would constitute notice to the plaintiff, when he purchased the major fraction of the 40 acres of land referred to in his petition. He must be bound by these facts and by the reasonable inferences to be drawn therefrom, to know not only the rights of the public, represented by the board of supervisors of Mills County and by the drainage district, but also the right which the railroad company had or might have, to continue to operate under those conditions.

In *Salinger v. Winthouser*, 200 Iowa 755, we held that a purchaser of real estate upon which water was drained through 10-inch tiling extending beneath the surface of plaintiff's land to and under the surface of defendant's land, was charged with notice of an oral contract between the plaintiff's grantor and the grantor of the defendant. Under the facts, we said:

"    *   *   *   that the purchaser of the lands now owned by plaintiff was put upon inquiry as to the existence and extent of such drainage system; that the outlets and the discharge of the water from them upon plaintiff's land were a visible servitude in apparent use, sufficient to put a purchaser upon inquiry as to its extent; and that inquiry, if followed out with reasonable diligence, would have resulted in the discovery of the nature and extent of the existing easement."

See, also, *Brown v. Honeyfield*, 139 Iowa 414.

A drainage ditch is constructed presumably for the benefit of all of the land within the district, and in the case at bar it

had been constructed, according to the allegation of plaintiff's petition, for about 15 years before plaintiff purchased his land. The bridge and the railroad grades and the openings in the grades to pass water in the ditch and the ditch itself were permanent improvements, and must be held to have constituted implied notice to the plaintiff of the right of easement claimed by the defendant-railroad.

We cannot escape the conclusion that the facts pleaded, which are admitted to be true by the demurrer, charged the plaintiff with the duty of inquiry with respect to the defendant's rights in the premises. Had he done so, he would have discovered the defendant's right to maintain its bridge at the present elevation, and the openings as they had existed for many years.

Plaintiff contends that the board of supervisors of Mills County cannot bind the public by any agreement with the railroad company respecting the capacity of its bridge in case the same is inadequate, and rely upon *Chicago & N. W. R. Co. v. Drainage Dist.*, 142 Iowa 607, and *Chicago, B. & Q. R. Co. v. People ex rel. Drainage Com.*, 200 U. S. 561.

It may be conceded, under the authorities, that there is a natural easement in every natural watercourse, as such, in favor of all lands naturally draining thereto at any point in its course; that the rights of the watercourse are paramount to the rights of a railroad company across the same; and that there is probably no power in the state or its agency to surrender such right. This proposition, however, does not meet the facts of the instant case.

It cannot be questioned that a landowner may waive and surrender his rights to damages resulting from an obstruction causing a diversion of water from its natural watercourse. This waiver and release was given to the defendant by a grantor in title of plaintiff's land; and, under the pleaded facts, had the plaintiff made inquiry, in the exercise of reasonable diligence under the implied notice, he would have discovered the matters which he now claims are not binding upon him.

The judgment entered by the trial court is—*Affirmed.*

EVANS, C. J., and ALBERT and MORLING, JJ., concur.