NATIONAL PROPERTIES
CORPORATION,
Appellee,

v.

POLK COUNTY, State of Iowa, Board of
Supervisors, Polk County, Board of
Drainage Administrators, District # 51,
Appellants.

No. 83–546.

Supreme Court of Iowa.

June 13, 1984.

Rehearing Denied July 11, 1984.

Dan L. Johnston, County Atty., and Linda N. Woito, Asst. County Atty., for appellants.

Kristine M. Fasano, and Jill S. Rolek, Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and McCORMICK, SCHULTZ, CARTER, and WOLLE, JJ.

REYNOLDSON, Chief Justice.

Plaintiff National Properties Corporation brought this action against defendants Polk County, The Polk County Board of Supervisors, and Board of County Drainage Administrators, District # 51, for the purchase price of land defendants allegedly orally agreed to buy for a drainage ditch. Judgment for $13,856 was entered for plaintiff on the jury's verdict. Defendants appeal and we now reverse and remand.

The evidence disclosed that in 1955 a large drainage district was formed in northern Polk County, Iowa, including lots 122 and 123 of Highland Park Acres, an official plat. These lots are bordered on the north by a street designated northwest 47th Place. Lot 122 was bounded on the west by northwest Second Avenue. Earlier, in 1942, the then lot owners, including contract vendees Earl V. and Ethel L. Streeter, had conveyed to the state of Iowa "for road purposes and for use as a Public Highway" the west sixty feet and the north 40 feet of lot 122 and the north 40 feet of lot 123. Other documentary evidence offered at trial from the Polk County auditor's office related to the establishment of drainage district # 51, and disclosed that damages to "E.V. & E.L. Streeter" were assessed and 'paid for drainage ditch right of way. Streeters received $467.70 for .0860 acres in lot 122 and $351.81 for .2165 acres in lot 123, Highland Park

Acres. At trial a Polk County civil engineer computed a total of 13,177 square feet had been taken from these owners for the ditch.

Plaintiff corporation acquired these lots in 1973 from Gulf Oil Corporation by special warranty deed that excepted from the conveyance the west 60 feet and the north 40 feet of lot 122, and the north 40 feet of lot 123, subject to "any state of facts and conditions that an accurate survey and personal inspection of the premises would disclose."

In 1980 the Polk County supervisors determined to clean out the open ditch in district # 51 and restore it to its original efficiency. There was little dispute that along plaintiff's property it had been encroached upon, caved in, and overgrown with trees and brush. County employees sought to obtain a work permit to enter plaintiff's property to do the necessary work.[1] Plaintiff's president and chief operating officer, Raymond DiPaglia, refused permission. He contended the county had no right on the premises because his abstract showed no recorded easement for the 1955 acquisition for the ditch. He also asserted the total ditch easement lay entirely within the 40-foot tract conveyed to the state in 1942.

DiPaglia testified county employees agreed the district's· alleged "easement" was invalid and agreed to pay plaintiff the fair market value of any land taken by the new work, whereupon he agreed to permit them to come on the premises and complete their project. The county employees testified they did not concede the district had no right of way on plaintiff's property, but did agree the county would compensate plaintiff for an easement across any land not covered by the 1955 easement.

The work lasted from July through September 1980. It consisted of cleaning out the ditch, regrading the surface, narrowing the base of the ditch, lengthening the slope, and widening the top of the levee. Plaintiff calculated the total widening at about

---

**1.** This may have been an unnecessary step, at least if the county worked within its original right of way. *See* Iowa Code section 455.135(1) (1979).

6300 square feet while defendants computed it at 2662 square feet. A chain link fence plaintiff had built to the north of a masonry building on the land was moved 13 to 20 feet closer to the structure. Defendants' evidence indicated it was constructed partially on the ditch slope.

At trial plaintiff's appraiser fixed plaintiff's damages at $16,310. His opinion was based on a taking of about 6300 square feet in fee, in addition to severance damages. Defendants' expert fixed the damages at $2000, representing the diminution in value caused by the county's acquisition of an additional 2662 square foot easement.

The trial evidence disclosed the base of the ditch was, for the most part, on the 40-foot strip on the north side of lots 122 and 123 conveyed to the state. There was evidence, however, from which the jury could have found the slope, levee and back slope extended into plaintiff's property, except where encroached upon by prior owners and the plaintiff.

Throughout trial, defendants sought to show the existence of a prior drainage right of way on plaintiff's property through records of the 1955 acquisition, kept in the auditor's office pursuant to Iowa Code sections 455.185 and 455.186. Plaintiff's counsel persuaded trial court that unless such evidence was recorded in the recorder's office, it was ineffective in establishing any prior rights in plaintiff's land. Trial court excluded much testimony and evidence of the 1955 acquisition on this premise.

When plaintiff rested, trial court granted plaintiff's oral motion to amend its petition to allege that it was a "bona fide purchaser in good faith."

Defendants appeal on a number of grounds. We discuss the controlling ground in division I.

I. Plaintiff's success in convincing the court that defendants could have retained no ditch right of way in plaintiff's property because there was nothing concerning it filed in the recorder's office caused the court to commit reversible error. This re-

sulted from a rigid interpretation and application of Iowa Code section 558.41:

No instrument affecting real estate is of any validity against subsequent purchasers for a valuable consideration, without notice, unless filed in the office of the recorder of the county in which the same lies, as hereinafter provided.

Plaintiff's contentions throughout trial ignored the words "without notice" in the above statute.

Existing rights in property may exist apart from filings in the recorder's office:

Absent express notice given, a land purchaser generally has three established sources of information to which he should turn for ascertainment of existing rights in any property he proposes to buy: (1) the records in the County Recorder's office where basic rights involved are recorded; (2) other public records, to discover existence of rights not always disclosed in the County Recorder's office, i.e., judgments, liens and taxes; and (3) an inspection of the land itself, to determine by observation any rights which may exist apart from our recording system by virtue of occupancy, use or otherwise.

*Bartels v. Hennessey Brothers, Inc.*, 164 N.W.2d 87, 94 (Iowa 1969).

■■■ Notice, then, may be constructive or actual. Constructive notice is given by compliance with the recording statutes. Actual notice depends upon the purchaser having either actual knowledge of the easement or knowledge of sufficient facts to charge him or her with a duty to make inquiry that would reveal the existence of the easement. *Gilmore v. New Beck Levee District, Harrison County*, 212 N.W.2d 477, 479 (Iowa 1973); *see also Stouder v. Dashner*, 242 Iowa 1340, 1353, 49 N.W.2d 859, 866 (1951). One who purchases land with knowledge of such facts as would put a prudent person upon inquiry which, if prosecuted with ordinary diligence, would lead to actual notice of rights claimed adversely by another, is chargeable with the actual notice he or she would have received. *Johnson v. Chicago, B. & Q.R.R.*,

202 Iowa 1282, 1288–89, 211 N.W. 842, 846 (1927).

■ We believe the record and offers of evidence made in this case would have permitted a jury finding that enough of the ditch was upon plaintiff's property to put it upon inquiry, and that such inquiry, pursued with ordinary diligence, would have led to the auditor's office and actual knowledge of the 1955 taking from plaintiff's predecessors in title. Under this record, it could also have revealed the right-of-way plan for the ditch, and a cross-section showing the bottom of the ditch, slopes, levee and back slopes to be approximately 71 feet wide—too wide to be contained within the 40-foot strip conveyed to the state.

■ Defendants' attempts to pursue this theory were punctuated by plaintiff's objections which were sustained by the court. This permeated the record and infected the instructions. Defendants' requested instruction relating to actual notice was rejected, as was its request that the jury be instructed on the theory of prescriptive easement. *See Gilmore*, 212 N.W.2d at 479 ("It is well established a drainage easement may be acquired by prescription.").

In its brief here plaintiff assumes a fallback position, stating:

> In this case, as in *Gilmore*, there was some open and obvious evidence the land was subject to a servitude. Once such facts become apparent, the purchaser is under a duty to further investigate, despite lack of information in the county recorder's office.

Plaintiff argues, however, that an investigation in the county auditor's office would have disclosed no survey of the location of the ditch with respect to its property lines. The inference, plaintiff suggests, is that the 13,177 square feet that plaintiff's predecessors in title were paid for actually encompassed the 40-foot strip they already had conveyed for road purposes. Logic would dictate, however, that they were paid for square footage they actually owned. There is a further logical inference that the taking was related to the ditch

that then was constructed; thus the ditch provided a frame of reference for locating the affected area on lots 122 and 123.

Upon retrial, defendants should be permitted to develop their theories of actual notice and prescriptive easement pursuant to the above principles. Upon proper proof, they should not be required to pay for the same rights twice.

II. Other issues raised by defendants may be disposed of summarily.

■ We are not persuaded plaintiff's sole remedy was mandamus to compel defendants to condemn. Iowa Code section 455.135(6) makes clear the right of way may be acquired through negotiations and purchase. *See Hagenson v. United Telephone Co.*, 164 N.W.2d 853, 856 (Iowa 1969).

When trial commenced the trial judge offered to recuse himself if either counsel requested it. He informed counsel DiPaglia, plaintiff's president, was a personal friend who had instituted a scholarship fund in the judge's name at Drake University. Apparently trial judge had inquired and there was no other judge available to preside in this jury case. Defense counsel stated she would not request the judge to recuse himself. After two days of trial defense counsel did make such a motion, and further moved for a mistrial. Both motions were denied. Because we reverse on the issue treated in division I, we are not required to reach this question. Moreover, in these circumstances we are confident a different judge will preside at the new trial.

Trial court's restriction of the testimony of defendants' engineer respecting a survey is not likely to recur, especially in view of new Iowa Rule of Evidence 703.

Our conclusion not to discuss other issues raised by defendants is not to be interpreted as passing upon their merit: We simply believe there is little likelihood of their recurrence in another trial.

■ III. Finally, we confront plaintiff's claim for attorney fees "based on the frivolous, bad faith and vexatious behavior of

[defendants]." Plaintiff first points to defendants' failure to honor the alleged contract sued on, complains of several unsurprising trial motions, and finally complains because defendants appealed. We find no merit in these contentions. *See Montgomery Properties Corp. v. Economy Forms Corp.*, 305 N.W.2d 470, 478–79 (Iowa 1981).

 We are more concerned with the tone and language in plaintiff's resistance to defendants' motion for new trial. This document, prepared by Kristine M. Fasano, launched an unseemly attack on the professional qualifications of defendants' trial attorney. Lawyers should remember ethical considerations 7–10, 7–37 and 7–38, Iowa Code of Professional Responsibility for Lawyers, and their oath "[t]o abstain from all offensive personalities" (*see* Iowa Code section 602.10112(5) (1983 Interim Supplement)).

For the reasons provided in division I, the judgment entered below is reversed and the case is remanded for new trial in conformance with this opinion.

REVERSED AND REMANDED.